IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUAN RIVERA,

                    Plaintiff,

          v.

LAKE COUNTY, *et al.*,

                    Defendants.

Case No. 12 C 8665

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Pending before the Court are a Motion for Judicial Notice and nine different Motions to Dismiss. For the reasons stated herein, the Motion for Judicial Notice is granted, and the Motions to Dismiss are granted with respect to Count III and denied with respect to all other Counts and all Defendants.

## I. BACKGROUND

This case arises out of the tragic wrongful conviction and twenty-year incarceration of Plaintiff Juan Rivera (hereinafter, "Plaintiff" or "Rivera"). The facts that follow are drawn from the allegations in the Complaint.

In August 1992, eleven-year-old Holly Staker was raped and murdered. It was a high-profile crime that drew significant media attention in the Chicago area. The crime remains unsolved.

At the time, nineteen-year-old Plaintiff was living with his family in Staker's neighborhood. Plaintiff had recently committed

a nonviolent theft offense, and he was under house arrest as a condition of his release. As such, he wore an electronic transmitter around his ankle. The device tracked his every move, and alarms went off whenever Plaintiff left his family's home.

The transmitter's records from the night of the murder showed that Plaintiff was at home the entire night. In addition, telephone records reflect that Plaintiff had a phone conversation with his mother, who was out of the country, that evening. This reliable electronic evidence showed that, on the night of the murder, Plaintiff was at home and could not have committed the crime.

Authorities were unable to solve the case, and the killer's trail went cold. Two months after the murder, police visited Plaintiff at Hill Correctional Center, where he was detained following his plea in the theft case. They asked him what he knew about the murder. Plaintiff provided information that he thought might help solve the crime and samples of his own blood and hair so that he could be eliminated as a suspect.

Three weeks later, police had Plaintiff transferred to Lake County Jail and began interrogating him about the Staker case. Plaintiff alleges that during the interrogation, police observed Plaintiff's difficulty with written and spoken English – his family had moved from Puerto Rico a few years earlier. In addition, Plaintiff reported to them at the time that he had pronounced

psychological and emotional issues, including previous suicide attempts. Plaintiff apparently told the police that he had received psychiatric care and medications to manage those problems.

Though aware of Plaintiff's vulnerabilities, police – acting at the urging of prosecutors who were eager to be seen as taking action on the yet unsolved crime – conducted a four-day interrogation that culminated in more than 24 hours of near constant questioning. To exhaust and disorient Plaintiff, they deprived him of sleep, moved him from one location to another, used different interrogators, and subjected him to multiple polygraph tests. To upset Plaintiff, they screamed at him at the top of their lungs and accused him of committing the rape and murder. To confuse him, they told him that he had failed the polygraph tests, even though the test results showed that his denials were entirely truthful. At one point, they allegedly tied Plaintiff's limbs together in a "hog tie," which rendered Plaintiff immobile and helpless.

Plaintiff alleges further that the police failed to give him any effective *Miranda* warnings. Despite the lack of warnings, Plaintiff invoked his right to remain silent and his right to counsel repeatedly. Plaintiff maintained his innocence and provided corroborating evidence. He requested that the police stop their abusive questioning.

- 3 -

But the interrogators persisted, and, after four days, Plaintiff suffered a complete mental breakdown. When police forced him to sign a statement they had written that implicated him in the murder, he submitted.

Plaintiff complains that other officials noticed this misconduct and either acquiesced or participated. Jail personnel observed Plaintiff in a catatonic state and did nothing to stop the interrogation. Prosecutors ignored Plaintiff's verifiable alibi and numerous indications that Plaintiff's statement was coerced. They disregarded the fact that none of the hundreds of pieces of physical evidence from the scene connected Plaintiff to the crime. For example, DNA evidence recovered from the victim's body did not match Plaintiff's DNA. They knew they had no evidence connecting Plaintiff to the rape and murder, yet they proceeded to prosecute him.

To make matters worse, police and prosecutors recruited a supporting cast of witnesses and used improper promises to induce them to implicate Plaintiff. Police manufactured a series of false and fraudulent police reports that ended up in the case file. It goes without saying that this conduct was concealed from Plaintiff.

In 1993, a jury convicted Plaintiff of rape and first-degree murder. The jury could not agree unanimously on the death penalty, so the trial judge sentenced Plaintiff to life in prison without

the possibility of parole.  Plaintiff might otherwise have been put to death.  Instead, he spent nearly two decades behind bars.

In December 2011, the Illinois Appellate Court vacated Plaintiff's conviction.  In that Court's view, no rational jury could have convicted Plaintiff of the crime.  Plaintiff walked free only after prosecutors declined to appeal that decision.

Plaintiff's Complaint alleges six counts of constitutional violations brought under 42 U.S.C. § 1983 and six counts of state law violations.  Because of the widespread misconduct that caused Plaintiff's extensive injuries, Plaintiff sues more than twenty-five named persons and entities, as well as unknown Defendants. While this Court need not recite every Defendant here, it will note those Defendants that are often referred to collectively. Defendants Lucian Tessman, Donald Meadie, Fernando Shipley, Howard Pratt, and Richard Davis (the "Waukegan Defendants") are former officers of the Waukegan Police Department and the Lake County Major Crimes Task Force.  Defendants Michael Waller, Jeffrey Pavletic, Matthew Chancey, Steven McCollum, and Michael Mermel (the "Prosecutor Defendants") are or were State's Attorneys.  Defendants Mark Curran, Charles Fagan, Estate of Clinton Grinnell (as successor in interest to Clinton Grinnell), and Michael Blazincic (the "Sheriff's Defendants") are current and former officers of the Lake County Sheriff's Department and the Lake County Major Crimes task force.

## II.  <u>LEGAL STANDARD</u>

A Complaint must provide a short and plain statement of the claim showing the plaintiff is entitled to relief.  FED. R. CIV. P. 8(a)(2).  A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of a complaint.  *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th. Cir. 2009).  To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, state a claim that is plausible on its face.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted).  When ruling on a motion to dismiss, the Court construes a complaint in the light most favorable to the plaintiff and accepts all well-pled facts as true. *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir. 2009).

## III.  <u>ANALYSIS</u>

Before turning to the Motions to Dismiss, the Court will address the Motion for Judicial Notice.  Defendants have requested this Court to take judicial notice of the document located on the New York Times' website at *http://www.nytimes.com/2011/11/27/ magazine/dna-evidence-lake-county.html?pagewanted=all&_r=0.* Courts can take judicial notice of facts not subject to reasonable dispute that "can be accurately and readily determined from sources who accuracy cannot reasonably be questioned."  FED. R. CIV. P. 201(b)(2).  Plaintiff does not oppose this Motion, and thus the

Court takes judicial notice of the document located at that web address.

## A.  Statute of Limitations

### 1.  *Coerced Confession Claims – Counts I, II, V, and VI*

Defendants move to dismiss Counts I, II, V, and VI – the coerced confession claims under § 1983 – on the ground that those Counts are time-barred.  Section 1983 does not have an express statute of limitations, so federal courts hearing claims under § 1983 adopt the forum state's statute of limitations for personal injury claims.  *Ashafa v. City of Chicago,* 146 F.3d 459, 461 (7th Cir. 1998).  In Illinois, the statute of limitations for § 1983 claims is two years.  *Dominguez v. Hendley,* 545 F.3d 585, 588 (7th Cir. 2008).  However, federal law determines when those claims accrue.  *Savory v. Lyons,* 469 F.3d 667, 672 (7th Cir. 2006).  Generally, claims accrue – and the clock on the statute of limitations begins to run – "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Wallace v. Kato,* 549 U.S. 384, 388 (2007) (citation and quotation omitted).

The statute of limitations does not begin to run if there is a bar to suit.  The relevant bar in this case is a consequence of the fact that § 1983 claims cannot be used to contest a criminal conviction.  *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1993).  A plaintiff who has been convicted and imprisoned may not bring a

§ 1983 claim that is inconsistent with the validity of that conviction until the conviction has been set aside in some other manner, such as by a successful *habeas corpus* petition. *Rodriguez v. Cook Cnty., Ill.,* 664 F.3d 627, 630 (7th Cir. 2011). But when there is no extant conviction to impugn, the *Heck* rule does not bar a § 1983 claim, and the cause of action accrues when the plaintiff knows or should know that his constitutional rights were violated. *Wallace,* 549 U.S. at 393.

To determine whether Plaintiff's claims are timely, this Court must first determine whether Plaintiff's coerced confession claims would have impugned the validity of his conviction. Plaintiff has alleged that Defendants violated his Fifth and Fourteenth Amendment right to be free from compulsory self-incrimination by using physical abuse to extract an inculpatory statement from him which was later introduced at trial. The Complaint alleges, and Defendants do not contest, that Plaintiff's conviction rested largely on his statement. Thus, Plaintiff's success on his § 1983 coerced confession claims would have implied the invalidity of his conviction, and therefore Plaintiff could not have brought these claims while his conviction was still valid.

Under *Heck,* Plaintiff did not have a "complete and present cause of action" until his conviction was set aside in December 2011. This conclusion is consistent with the weight of authority in this District, which holds that *Wallace's* accrual rule does not

trump the *Heck* bar in the coercive interrogation context where "the plaintiff's conviction rested largely upon the allegedly coerced conviction." *Tillman v. Burge,* 813 F.Supp.2d 946, 970-71 (N.D. Ill. 2011) (collecting cases). Plaintiff filed his Complaint in October 2012, well within the two-year statute of limitations. Accordingly, Plaintiff's claims are not time-barred.

### 2. *Due Process – Count IV*

In Count IV, Plaintiff alleges that Defendants violated his Due Process right to a fair trial. This claim could not have been brought while Plaintiff's conviction was valid because success on this claim would have implied the invalidity of his conviction. *See, Heck,* 512 U.S. at 479, discussed *supra*. This claim did not accrue until Plaintiff's conviction was vacated, and thus his claim is timely.

### 3. *State Law Claims – Counts VII, VIII, and IX*

Defendants argue that three of Plaintiff's state law claims – those for malicious prosecution, intentional infliction of emotional distress (the "IIED"), and conspiracy – are time-barred.

Claims for malicious prosecution under Illinois law require termination of the proceedings in favor of the plaintiff. *Reynolds v. Menard, Inc.,* 850 N.E.2d 831, 837 (Ill. App. 2006). Criminal proceedings do not terminate until the State is "precluded from seeking reinstatement of the charges." *Ferguson v. City of Chicago,* 820 N.E.2d 455, 461 (Ill. 2004). Plaintiff's claim did

not accrue until the State declined to appeal the December 2011 decision that vacated Plaintiff's conviction. The Complaint was filed less than a year later, well within the two-year statute of limitations, so this claim is timely. *See,* 735 Ill. Comp. Stat. 5/13-202.

Courts in this district treat IIED similarly. Courts hold consistently "that IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated." *See, e.g., Carroccia v. Anderson,* 249 F.Supp.2d 1016, 1028 (N.D. Ill 2003). As with the malicious prosecution claim, state criminal proceedings terminated when the State declined to appeal the December 2011 decision that vacated Plaintiff's conviction. Here, as in *Carroccia,* Plaintiff's claim was filed within a year of the termination of criminal proceedings, and thus his claim for IIED based on malicious prosecution is timely.

Defendants have provided no reason why Plaintiff's conspiracy claim should be treated differently. Finding no case law to the contrary, the Court concludes that Plaintiff's conspiracy claim is timely.

## B.  Failure to State a Claim

### 1.  *Monell Claims – Counts I, II, and IV*

#### a.  *All Defendants*

Plaintiff's Counts I, II, and IV allege municipal liability based on misconduct undertaken pursuant to official policy and practice.  *See, Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

> A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority.

*Id.* at 690.  Plaintiff must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice" that lead to the constitutional violations.  *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation omitted).

The Complaint alleges that "there existed a widespread practice . . . under which criminal suspects were coerced to involuntarily implicate themselves." Compl. ¶ 123.  In addition, those policies and practices resulted in numerous false confessions. Compl. ¶ 126. The Complaint alleges that Plaintiff's injuries were caused by Defendants "who acted pursuant to the

policies, practices, and customs set forth [in preceding paragraphs]." Compl. ¶ 128.

These allegations suggest that Plaintiff may be able to prove his *Monell* claim as either an official policy or a widespread but unofficial custom. The Complaint satisfies Rule 8's pleading requirements because it alleges facts that, if proven, would show that Plaintiff is entitled to relief under *Monell*. Thus, the Motion to Dismiss these claims is denied.

### b. Defendant Lake County

Plaintiff's *Monell* claims raise a separate issue: whether Lake County can be held liable under *Monell* for actions of other Defendants. Plaintiff acknowledges that Lake County is not liable independently under § 1983 for *Monell* theories asserted against the Lake County Sheriff's Department. Pls.' Opp. 10, ECF No. 121. Plaintiff argues that Lake County can still be liable for the policies and practices of the Task Force.

Defendant Lake County directs this Court to *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990), a case that addressed § 1983 liability for municipalities with concurrent jurisdiction over an area of Lake Michigan. Under the terms of an intergovernmental agreement, Lake County and the City of Waukegan decided that the County, and not the City, would be responsible for rescues in the lake. *Id.* at 1429. In a moment of crisis, a County official prevented City rescue personnel and civilians from diving to save

a drowning boy.  *Id.* at 1424-25.  As to the City's liability, the Court noted that, under well-settled principles, "the government's failure to provide essential services does not violate the Constitution."  *Id.* at 1428 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189 (1989)).  Because the city had no constitutional obligation to perform rescues, and because the city had no control over the County's rescue policies, the city could not be held liable under § 1983 for the County's failure to rescue.  *Ross,* 901 F.2d at 1428-29.

However, unlike in *Ross*, Plaintiff alleges that the municipal defendant failed to fulfill a constitutional obligation.  While the government has no affirmative duty to rescue, it is axiomatic that the government must comply with the affirmative commands of the Fifth Amendment.  In addition, Plaintiff has pled that Defendant Lake County controlled the policies and practices that lead to the constitutional violation.  *See,* Compl. ¶ 28.  Thus, Plaintiff has stated a claim that Lake County is responsible under *Monell* for actions taken by the Task Force, and the Motion is denied.

### 2. *Federal Malicious Prosecution – Count III*

Plaintiff's Count III is a federal malicious prosecution claim under § 1983.  The Seventh Circuit does not recognize federal malicious prosecution claims where, as here, state tort law supplies a similar cause of action.  *Newsome v. McCabe,* 256 F.3d

747, 750 (7th Cir. 2001). Accordingly, Defendants' Motion to Dismiss Count III is granted.

### 3. **Brady –** *Count IV*

Prosecutors have an obligation to disclose to the defense "evidence [] material either to guilt or punishment." *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Police officers, for their part, violate due process when they withhold exculpatory information. *Dominguez v. Hendley,* 545 F.3d 585, 589 (7th Cir. 2008).

In Count IV, Plaintiff alleges that "Police Officer Defendants deliberately withheld exculpatory evidence from Plaintiff and from the Prosecutor Defendants." Compl. ¶ 142. Plaintiff complains that "Police Officer Defendants fabricated and solicited false evidence, including testimony that they knew to be false and perjured and fabricated police reports." Compl. ¶ 143. Plaintiff has also alleged that the Sheriff's and Prosecutor Defendants were "in constant contact during Plaintiff's interrogation." Compl. ¶ 73.

Plaintiff's allegations against the Prosecutor Defendants state a claim for a *Brady* violation. With regard to the Sheriff's Defendants, this Court recognizes that Plaintiff's allegations seem incongruous: it is difficult to imagine that the Sheriff's Defendants could withhold information from the Prosecutor Defendants if they were in constant communication with those same prosecutors. However, at the motion to dismiss stage, this Court

must draw all inferences in favor of the non-moving party. It is possible to infer that the officers withheld information from prosecutors even as they were in constant communication about other evidence and the trial in general.

As Defendants point out, *Brady* is not a vehicle for malicious prosecution claims. *See, McCann v. Mangialardi,* 337 F.3d 782, 786 (7th Cir. 2003) (due process not violated where officer allegedly manufactured evidence but plaintiff was never tried). However, the Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann,* 682 F.3d 567, 580 (7th Cir. 2012). *McCann,* in which the Plaintiff was not convicted, does not govern this case. *See*, *McCann,* 337 F.3d at 786. Critical in this case is that the allegedly fabricated evidence was used against Plaintiff at trial and helped secure his conviction – Count IV is thus not a disguised malicious prosecution claim. Accordingly, the Motion to Dismiss Count IV is denied.

### 4. *Conspiracy – Count V*

To state a claim for conspiracy under § 1983, a complaint must include plausible allegations of a conspiracy to violate Plaintiff's constitutional rights. *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). The Complaint alleges that Defendants, even when confronted with evidence showing that

- 15 -

Plaintiff had not committed the crime, "took further steps to implicate Plaintiff in the crime" because they "were determined to conceal their wrongdoing." Compl. ¶ 86. Under Seventh Circuit precedent, allegations of a pattern of misconduct by a group of individuals can give rise to an inference that the misconduct was the result of a conspiratorial agreement. *Geinosky,* 675 F.3d at 743. This Complaint thus includes plausible allegations of conspiracy, so the Motion to Dismiss Count V is denied.

### 5.  *Failure to Intervene – Count VI*

The Waukegan Defendants and the Prosecutor Defendants argue that they cannot be liable for failure to intervene. As Defendants point out, prosecutors ordinarily have no authority over police departments and have no duty to intervene to stop police misconduct. *See*, *Andrews v. Burge,* 660 F.Supp.2d 868, 876 n.6 (N.D. Ill. 2009). However, Plaintiff has limited his theory against the Prosecutor Defendants. He argues that they chose to act as police officers and to participate in the interrogation. By doing so, they put themselves in a position where they were exercising police powers and would have had "a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right[s]." *Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005). Though this Court is aware of no case that has found prosecutors liable for failure to intervene, the Court is not convinced that it would be impossible for Plaintiff to

prove facts supporting this claim. Therefore, the Motion to Dismiss Count VI is denied.

### 6. *Malicious Prosecution – Count VII*

In Illinois, a claim for malicious prosecution requires the commencement or continuation of an original criminal or civil judicial proceeding by the defendant. *Reynolds v. Menard, Inc.,* 850 N.E.2d 831, 837 (Ill. App. 2006). Ordinarily, the prosecutor's independent decision to indict "breaks the chain of causation linking the police to the wrongful prosecution." *Steeves v. McGrath,* No. 99-C-4567, 2000 WL 198895, at *4 (N.D. Ill. Feb. 11, 2000) (citing *Reed v. City of Chicago,* 77 F.3d 1049, 1053 (7th Cir. 1996)).

An assortment of non-prosecutor Defendants argue that Count VII should be dismissed as to them because it fails to allege sufficiently that they commenced the criminal prosecution. However, the chain of causation is broken only if the prosecutor's decision is completely independent of any action on the part of the individual whom the plaintiff is trying to hold liable. *Jones v. City of Chicago,* 856 F.2d 985, 993 (7th Cir. 1988). Here, Plaintiff has alleged that the other Defendants influenced the decision to prosecute. Thus, there was no break in causation, and the Complaint states a claim against those Defendants for malicious prosecution. The Motion to Dismiss Count VII is denied.

### 7. *Civil Conspiracy – Count IX*

Defendants argue that Count IX should be dismissed because the underlying tort has already been pled in the case and thus the civil conspiracy claim is duplicative. This argument contravenes Illinois law. The Illinois Supreme Court has explained that "dismissal of [a] conspiracy count as duplicative of other theories of recovery alleged in the complaint is, at [the pleading stage], premature." *Dowd & Dowd, Ltd. v. Gleason,* 693 N.E.2d 358, 371 (Ill. 1998). "A plaintiff may plead and prove multiple causes of action, though it may obtain only one recovery for an injury." *Id.*

Thus, Plaintiff's conspiracy claim need not be dismissed as duplicative, and the Motion to Dismiss Count IX is denied.

### 8. *Defamation – Count X*

Plaintiff alleges that, before his conviction was overturned, Defendant Tessman proclaimed that Plaintiff "is guilty as the day is long," and Defendant Maley said "I can tell you 100 percent that Juan Rivera did the murder." Compl. ¶ 187. Plaintiff alleges that Defendants Mermel, Tessman, and Maley "published intentionally false and misleading statements and lies . . . that they knew to be false." Compl. ¶ 177. In addition, Defendant Mermel made several statements – including one in which he accused the eleven-year-old victim of being sexually active – that were calculated to impugn the DNA evidence that proved that Plaintiff was not involved in the crime. Compl. ¶ 178, 180.

Defendants move to dismiss the defamation count on the grounds that the statements were (1) true; (2) constitutionally protected opinion; (3) subject to a reasonable innocent construction; (4) fair comment on a judicial proceeding; and (5) not of or concerning Plaintiff.

### a.  Truth

In Illinois, "the truth, when published with good motives and for justifiable ends, shall be a sufficient defense" to a defamation action.  ILL. CONST. art 1, § 4.  Only "substantial truth" is required for this defense, which under Illinois law may be raised in a motion to dismiss.  *Lemons v. Chronicle Pub. Co.,* 625 N.E.2d 789, 791 (Ill. App. 1993).  In *Lemons,* Illinois's intermediate appellate court held that a statement that the plaintiff was convicted of violence against two individuals was "substantially true" where the plaintiff injured two victims but was convicted of violence against only one person.  *Id.*  The truth defense was available because the "gist or sting" of the statement was accurate.  *Id.*

The case before this Court raises an interesting issue, because when the statements were made, Plaintiff's guilty conviction was valid and Plaintiff was serving time.  However, the statements alleged in the Complaint assert more than just the fact of conviction or incarceration.  The "gist or sting" of those statements is not just that Plaintiff had been convicted, but that

he committed the acts for which he was convicted. The statements at issue, especially if known to be false, cannot hide behind the truth defense.

### b. Opinion

Statements of opinion can be protected by the First Amendment, but one cannot couch factual statements in language of opinion and claim that the speech is suddenly protected. *See, Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18-19 (1990). Prefacing a statement of fact with "I think" or "in my opinion" does nothing to lessen the damage inflicted by the "false assertion of fact" that follows. *Id.* at 19; *Giant Screen Sports v. Canadian Imperial Bank of Commerce,* 553 F.3d 527 (7th Cir. 2009). Defendants' statements not only lack the prefatory language that would even raise this issue, but also assert facts: that Plaintiff committed the rape and murder. The statements at issue are not protected opinion.

### c. Reasonable Innocent Construction

A statement is not defamatory *per se* if it is reasonably capable of an innocent construction. *Tuite v. Corbitt,* 866 N.E.2d 114, 121 (Ill. 2006). Defendant Maley notes correctly that the statement that Plaintiff "did the murder" could refer to the fact that Plaintiff was convicted. However, that statement is capable of defamatory constructions as well. Because this Court is ruling on a Motion to Dismiss, the Court construes the Complaint in the light most favorable to Plaintiff. *Justice v. Town of Cicero,* 577

- 20 -

F.3d 768, 771 (7th Cir. 2009). Thus, this defense is unavailable at this stage.

### d. Fair Comment on a Judicial Proceeding

Just as Defendant Maley's statement might be subject to a reasonable innocent construction, so it might be fair comment on a judicial proceeding if it referred to the fact of conviction rather than the fact of who committed the crime. A fact finder might see the comment as a reference to Plaintiff's conviction only, in which case it would be protected by the fair comment privilege if it was either a complete and accurate report or a fair abridgement of the official proceeding. *Solia Tech., LLC v. Specialty Publ'g Co.,* 852 N.E.2d 825, 843 (Ill. 2006). But as with the reasonable innocent construction argument, this Court cannot at this time dismiss Count X as fair comment because doing so would require the Court to construe the Complaint in a light less favorable to Plaintiff.

### e. Of or Concerning Plaintiff

To be defamatory, a statement must be of or concerning Plaintiff. *Green v. Rogers,* 917 N.E.2d 450, 459 (Ill. 2009). In the statement at issue, Defendant Mermel accused the eleven-year-old victim of being sexually active. Compl. ¶ 178. That statement relates to Plaintiff because it explains how Plaintiff could have raped the victim yet not have been the source of the semen found inside her. Defendant cites no authority for the idea that a statement must mention a person by name to defame that person, or

that a statement can defame only one person. Plaintiff has pled adequately that the statements defamed him, and thus dismissal is inappropriate.

For the foregoing reasons, the Motion to Dismiss Count X is denied.

### 9. Respondeat Superior – *Count XI*

Count XI alleges *respondeat superior* liability, and Defendant Lake County has moved to dismiss it from this Count on the ground that it is not responsible for any of the named Defendants. "A principal is liable for the tort of his agent under the doctrine of *respondeat superior* when the tort is committed within the scope of the agent's agency." *Krickl v. Girl Scouts, Ill. Crossroads Council, Inc.,* 930 N.E.2d 1096, 1100 (Ill. App. 2010). Plaintiff acknowledges that Lake County cannot be held liable under § 1983 based on *respondeat superior*, and that the County cannot be held liable for torts committed by Lake County Sheriff's Defendants outside of their participation in the Task Force. The question, then, is whether Lake County is responsible for any other conduct implicated by the Complaint.

Viewing the Complaint in the light most favorable to the Plaintiff, this Court is persuaded that the answer is yes. The Complaint alleges that "each of the other Police Officer Defendants acted as an agent of Lake County while conducting investigations" and that those officers committed torts. Compl. ¶ 23. Plaintiff

- 22 -

must be given an opportunity to prove the truth of these assertions. The Motion to Dismiss Count XI on this ground is denied.

### C. Group Pleading

Defendants take issue with what they call "group pleading." They request that this Court dismiss the Complaint, or, in the alternative, that this Court order a more definite statement pursuant to FED. R. CIV. P. 12(c).

### 1. Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation and citation omitted). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Defendants are correct that to be liable under § 1983, a defendant must be responsible personally for the deprivation of the constitutional right. *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983). However, an allegation directed at multiple defendants can be adequate to plead personal involvement. *See, Brooks v. Ross,* 578 F.3d 574, 582 (7th Cir. 2009). This Court recognizes that a plaintiff may not be able to attribute misconduct

to specific individuals where the plaintiff did not know the identity of the offender at the time of the incident. In addition, where a plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery. *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 821 (7th Cir. 2009). Plaintiff's job at this stage is to allege with sufficient factual detail that each of the Defendants caused or participated in an alleged constitutional violation.

To be sure, Plaintiff's Complaint is lengthy – it spans more than 200 paragraphs, some of which are more detailed than others. Some paragraphs refer to all misconduct perpetrated by "Defendants." Defendants protest that they cannot answer this Complaint because they do not know which actions they are being accused of taking and which claims are being asserted against them. At the same time, many of the Complaint's paragraphs identify specific individuals, and many others refer to identifiable subsets of Defendants (*e.g.,* the "Prosecutor Defendants"). In addition, Defendants are alleged to have confused Plaintiff deliberately during the interrogation and withheld information from him leading up to and during trial. It is not surprising that Plaintiff cannot, at this stage, attribute every wrongful act to a specific Defendant.

The Court is not persuaded that the Complaint is impossible to answer. The Complaint presents a coherent narrative that "raise[s] a right to relief above the speculative level," and far more than just a "formulaic recitation of elements." *See, Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Individual Defendants or subgroups of Defendants are free to admit, deny, or claim lack of knowledge as to every single allegation in the Complaint. As one Court in this District explained recently in a similar case, "[t]he Defendants, and not [Plaintiff], are in possession of the knowledge of precisely which of them, if any, interrogated, manipulated, threatened, or coerced [victims] into giving false testimony." *Wilson v. City of Chicago,* No. 09-C-2477, 2009 WL 3242300, at *2 (N.D. Ill. Oct. 7, 2009).

Under the circumstances presented here, it would be unreasonable for this Court to expect more specific allegations until the parties have conducted discovery. This Court is satisfied that the Complaint refers adequately to specific Defendants or subgroups of Defendants when possible, and includes enough factual content to give those Defendants fair notice of the claims against them. Accordingly, the Complaint does not fail for so-called "group pleading," and the Motion to Dismiss on this ground is denied.

## 2. *Motion for a More Definite Statement*

In the alternative, Defendants move under Rule 12(e) for a "more definite statement" of the allegations against each Defendant. A defendant can move for a more definite statement under Rule 12(e) where a "pleading fails to specify the allegations in a manner that provides sufficient notice." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002). Motions under Rule 12(e) are disfavored generally, and courts should grant such motions only if the complaint is so unintelligible that the defendant cannot draft responsive pleading. *See, Moore v. Fidelity Fin. Servs., Inc.,* 869 F.Supp. 557, 559-560 (N.D. Ill. 1994). As discussed above, the Plaintiff's Complaint is not "unintelligible." For every paragraph in the Complaint, Defendants can draft responsive pleading that admits, denies, or claims lack of knowledge. The Motion for a More Definite Statement is denied.

### D. Availability of Other Remedies

Count II alleges that Defendants used extreme techniques of physical and psychological coercion to extract the false confession. Compl. ¶ 129-34. Defendants argue that this Fourteenth Amendment coerced confession claim is barred because redress is available under explicit constitutional provisions and state law.

As to constitutional provisions, police torture or other abuse that results in a confession violates the Fifth Amendment Self-

Incrimination Clause if the statement is used at trial. *Chavez v. Martinez,* 538 U.S. 760, 767 (2003). In addition, a plaintiff may assert a Fourteenth Amendment substantive due process claim based on "police torture or other abuse that results in a confession." *Id.* at 773. "Convictions based on evidence obtained by methods that are so brutal and offensive to human dignity that they shock the conscience violate the Due Process Clause." *Id.* at 774 (citation and quotation omitted).

This Court agrees with the weight of authority in this District: harmful police interrogation can violate both the Fifth Amendment's Self-Incrimination Clause and the Fourteenth Amendment's Due Process Clause. *See, e.g.*, *Tillman v. Burge,* 813 F.Supp.2d 946, 969 (N.D. Ill. 2011); *Kitchen v. Burge,* 781 F.Supp.2d 721, 735 (N.D. Ill. 2011).

Defendants gain more traction with their argument that Count II is displaced by state-law remedies. Seventh Circuit precedent instructs that substantive due process claims cannot be brought where parallel state-law tort claims are available. *Newsome v. McCabe,* 256 F.3d 747, 751 (7th Cir. 2001) (explaining that "satisfying the elements of the state-law tort of malicious prosecution . . . knocks out any constitutional tort of malicious prosecution"). So, for example, the Court denied a due process claim that was "nothing more than a hybrid of [plaintiff's] Fourth

Amendment false arrest and state law malicious prosecution claims." *Fox v. Hayes,* 600 F.3d 819, 841 (7th Cir. 2010).

Count II is based on the misconduct that took place when Plaintiff was interrogated. To be sure, similar conduct is at issue in Counts VII, VIII, and IX, Plaintiff's state law claims for malicious prosecution, intentional infliction of emotional distress, and civil conspiracy. But those claims are not parallel to the federal claim – they reach different conduct as well. Plaintiff's due process claim seeks to remedy the recognized constitutional wrong associated with the police misconduct that extracted his statement, for which no state-law analogue is available.

This claim is not an attempt at an "end run" around Circuit precedent that bars federal malicious prosecution claims. *See, McCann v. Mangialardi,* 337 F.3d 782, 786 (7th Cir. 2003). Rather, it is a different federal claim entirely, albeit one that happens to be brought under the Due Process Clause of the Fourteenth Amendment, the same clause that would be the vehicle for federal malicious prosecution claims if such claims were recognized in this Circuit. However, this Court is not persuaded that state-law remedies rectify the conduct complained of here adequately.

Because the Fourteenth Amendment coerced confession claim is not displaced by the other federal and state law claims in the complaint, the Motion to Dismiss Count II on this ground is denied.

### E. Immunity

#### 1. *Absolute Immunity*

Defendant Mermel argues that absolute immunity bars the defamation claim against him. Illinois recognizes a defense of absolute immunity that protects executive officials from defamation claims for statements made when the official "was acting within the scope of his official duties." *Blair v. Walker,* 349 N.E.2d 385, 387 (Ill. 1976). A prosecutor's statements to the press can be within the scope of employment. *See, Ware v. Carey,* 394 N.E.2d 690, (Ill. App. 1979) (prosecutor's statement regarding investigation into police corruption were "related to his responsibilities as leader of community law enforcement and his concomitant duty to investigate police corruption"). At the same time, "[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor." *Buckley v. Fitzsimmons,* 509 U.S. 259, 277-78 (1993) (explaining that "[a]t the press conference, [the prosecutor] did not act in his role as advocate for the State").

This Court recognizes the need to give prosecutors wide latitude to "inform[] public opinion as to the quality of service rendered by public officials." *Hobbs v. Cappelluti,* 899 F.Supp.2d 738, 776 (N.D. Ill. 2012). However, Plaintiff has alleged facts that, if proven, would show that Defendant Mermel's statements were made outside the scope of his official duties. According to the

Complaint, Defendant Mermel's statements were "made after his involvement in the criminal case against Plaintiff had ended" and "were not made in connection with his employment." Compl. ¶ 182-84.

Cases cited by Defendant Mermel do not support dismissing Plaintiff's Complaint. In *Ware,* the immunity issue was resolved on summary judgment, after a factual record was established. *Ware,* 394 N.E.2d at 702. And in *Hobbs,* the Court dismissed a portion of the complaint on immunity grounds because facts alleged in the complaint showed that the statement was made on the same day that the Plaintiff's case was *nolle prosequi. Hobbs,* 899 F.Supp.2d at 776. Here, the Complaint states a claim that Defendant Mermel is not entitled to absolute immunity, and thus the Motion to Dismiss on this ground is denied.

### 2. *Qualified Immunity*

The Sheriff's Defendants and the Prosecutor Defendants argue that they are entitled to qualified immunity against Plaintiff's Fifth Amendment coerced confession claim. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quotation omitted).

Qualified immunity is a full immunity from suit, designed to protect government officials from not just liability but also the burdens of standing trial or being subjected to discovery. *Id.* Thus, courts endeavor to "resolv[e] immunity questions at the earliest possible stage of litigation." *Id.* at 232. However, "the plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Jacobs v. City of Chicago,* 215 F.3d 758, 765 n.3 (7th Cir. 2000). "Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage in inappropriate." *Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir. 2001).

The Sheriff's Defendants thus withdrew their 12(b)(6) Motion based on qualified immunity. The Prosecutor Defendants made no mention of withdrawing their Motion, although they did not return to it in their Reply brief. In any event, the Court agrees with Plaintiff and the Sheriff's Defendants that dismissal on qualified immunity grounds is inappropriate at this stage. The Motion to Dismiss on this ground is denied.

### F. Proper Defendants

#### *1. The Task Force*

The Task Force moves to dismiss all claims against it on the ground that it is not an entity capable of being sued. Only a "person" can be held liable under § 1983, *see,* 42 U.S.C. § 1983,

but "person" includes local governmental entities that are not arms of the state. *Howlett v. Rose,* 496 U.S. 356, 377 (1990).

As alleged, the Task Force is "an inter-agency law-enforcement organization." Am. Compl. ¶ 29. In addition, Plaintiff has represented to the Court – through its opposition to the Motions to Dismiss – that he believes and expects to be able to prove that the Task Force has an independent legal existence, an organizing agreement, a budget, and operational staff. The District Court may rely on this information in ruling on the motion to dismiss. *See, Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012) (explaining that "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove").

There is authority for the idea that a "multijurisdictional law enforcement agency" is subject to suit under § 1983. In *Maltby,* the Seventh Circuit found that a law-enforcement "Task Force" could be sued where the Task Force was organized pursuant to the Illinois Constitution and to the Intergovernmental Cooperation Act, 5 Ill. Comp. Stat. 220/1. *Maltby v. Winston,* 36 F.3d 548, 560 n.14 (7th Cir. 1994). At the same time, a mere collaboration of other municipal entities that exists in name only would not be amenable to suit, just as a municipality's departments cannot be sued in their name if they lack independent legal existence. *Manney v. Monroe,* 151 F.Supp.2d 976, 988 (N.D. Ill. 2001). For

example, Courts in this District have held that the Chicago Police Department is not a suable entity because it "has no separate legal existence apart from the City of Chicago." *Chan v. City of Chicago,* 777 F.Supp. 1437, 1442 (N.D. Ill. 1991).

Ultimately, whether the Task Force is amenable to suit is a question of fact. Resolution of that question depends on, among other things, whether the Task Force has an independent legal existence and is organized as a separate municipal entity under Illinois law. This Court cannot resolve that question at this stage, so the Motion to Dismiss the Task Force is denied.

### 2. *Marion Grinnell and Estate of Clinton Grinnell*

Defendant Marion Grinnell, as alleged personal representative of the Estate of Clinton Grinnell, has moved to dismiss Plaintiff's Complaint against both her and the Estate as barred under Illinois law. She directs the Court to Illinois's "Death of party" statute, which provides:

> If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof . . . an action may be commenced against his or her personal representative after the expiration of the time limited for the commencement of the action.

735 Ill. Comp. Stat. 5/13-209(b). However, that section does not apply to actions brought *before* the expiration of the time limited for the commencement of the action. *Rivera v. Taylor,* 336 N.E.2d 481, 485 (Ill. 1975). The fact that the statute was renumbered in

1982, seven years after *Taylor* was decided, does not change the proper interpretation of the statute. *See, id.* at 483 (quoting the version of the statute then in effect).

Defendants interpret the section differently, and incorrectly. They appear to argue that it governs only suits instituted before the expiration of the time limited for the commencement thereof. *See,* Doc. 169 at 3-4. Defendants should read on – the second part of the statute discusses when an action may be commenced "after the expiration of the time limited for the commencement of the action." 735 Ill. Comp. Stat. 5/13-209(b). The reasoning in *Taylor* applies perfectly: the statute exists to extend the statute of limitations because it discusses when, after the statute of limitations has lapsed, a plaintiff can still file suit. Because Plaintiff's suit was brought before the statute of limitations expired, Plaintiff does not need to use that statute to extend the statute of limitations.

Defendants next direct this Court to 755 Ill. Comp. Stat. 5/18-12, which limits the time for filing claims against the estate of a decedent. Illinois courts have explained that this statute does not limit the time for filing actions to recover damages caused by the decedent's tortious acts. *See, Schloegl v. Nardi,* 234 N.E.2d 558, 561 (Ill. App. 1968) (holding that estate could be reopened and executors reappointed so that cause of action not barred by statute of limitations could be asserted against estate

- 34 -

for personal injuries sustained during decedent's lifetime). As in that case, the relevant time bar is the statute of limitations associated with the claim itself, not one set by 755 Ill. Comp. Stat. 5/18-12.

Mrs. Grinnell argues that claims against her should be dismissed because Plaintiff failed to follow the procedural steps necessary to name her as special representative for purposes of defending this lawsuit. This Court has the discretion to appoint a special representative so that the action can be maintained in case the estate has assets that can be recovered. *Tamburo v. Dworkin,* No. 04-C-3317, 2012 WL 104545, at *4 (N.D. Ill. 2012). The Motion to Dismiss these Defendants is denied.

### 3. David Ostertag

Defendant Ostertag argues that the complaint against him should be dismissed because it mentions him only several times, and thus it fails to provide him fair notice of the allegations against him. Defendant cites to a case from this District in which the Court held that a complaint that referred to multiple police officer defendants collectively "d[id] not provide each defendant officer with sufficient notice of the wrongdoings alleged." *Carter v. Dolan,* 2009 WL 1809917, at *3 (N.D. Ill. 2009).

In that case, however, the "Plaintiff was given the opportunity to identify the individual conduct of each Defendant officer and failed to do so." *Id.* Unlike in *Carter*, Plaintiff has

- 35 -

not had an opportunity to identify the individual conduct of each Defendant officer. As explained earlier, Defendants and not Plaintiff know which specific wrongs (if any) were committed by specific Defendants. *See,* Part III.C. Thus it would be unreasonable for this Court to expect more specific allegations until the parties have conducted discovery. Defendant Ostertag is free to admit, deny, or claim lack of knowledge as to all allegations in the Complaint. The Motion to Dismiss him is denied.

## IV. **CONCLUSION**

For the reasons stated herein, the Motion for Judicial Notice (ECF No. 111) is granted. All pending Motions to Dismiss (ECF Nos. 94, 97, 100, 102, 103, 105, 109, 145, and 164) are granted with respect to Count III and denied with respect to all other Counts and all Defendants.

**IT IS SO ORDERED**.

_____
        Harry D. Leinenweber, Judge
        United States District Court

Date: September 26, 2013

- 36 -