**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN A. RIVERA, JR., | ) | |
| | ) | Case No. 12 CV 8665 |
| Plaintiff, | ) | |
| | ) | Honorable Harry D. Leinenweber |
| v. | ) | |
| | ) | |
| LAKE COUNTY, Illinois, et al., | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF PROSECUTOR DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Dated: February 5, 2015

/s/ Thomas F. Downing
THOMAS F. DOWNING, Attorney No. 06188673
*One of the Attorneys for Defendants Michael*
*Waller, Jeffrey Pavletic, Matthew Chancey,*
*Steven McCollum, and Michael Mermel*

James G. Sotos
Elizabeth A. Ekl
Caroline P. Golden
Jaclyn L. McAndrew
Jordan A. Lejcar
Thomas F. Downing *(Of Counsel)*
THE SOTOS LAW FIRM, **P.C.**
550 E. Devon Avenue, Suite 150
Itasca, Illinois 60143
Tel: (630) 735-3300
Fax: (630) 773-0980
tfdowning56@gmail.com

**TABLE OF CONTENTS**

Page

BACKGROUND - UNDISPUTED FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Plaintiff's Involvement in the Staker Murder Investigation. . . . . . . . . . . . . . . . 1

    B.    Prosecutor Defendants' Involvement with Plaintiff and the LCMCTF. . . . . . . . . 2

SUMMARY JUDGMENT STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SECTION 1983 CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    The Prosecutor Defendants are Entitled to Prosecutorial Immunity. . . . . . . . . . . 6

    B.    Alternatively, Prosecutor Defendants are Entitled to Qualified Immunity . . . . . . 10

STATE LAW CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Prosecutorial Immunity Defeats Plaintiff's State Law Claims. . . . . . . . . . . . . . 12

    B.    Defendant Mermel is Entitled to Summary Judgment on Plaintiff's Defamation Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.    Defendant Mermel Did Not Tell the NYT that Plaintiff Raped and Murdered Holly Staker.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.    Defendant Mermel's Other Statements Were Not of or Pertaining to Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        3.    Defendant Mermel's Statements are Protected by Absolute Executive Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        4.    Defendant Mermel's Statements are Protected by Attorney Litigation Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        5.    Defendant Mermel's Statements are Protected by the Fair Report Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        6.    Defendant Mermel's Statements Were True and are Protected Opinion .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**Cases:**          **Page**

*Anderson v. Simon,* 217 F.3d 472 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Andrews v. Burge,* 660 F. Supp. 2d 868 (N.D. Ill. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blair v. Walker,* 349 N.E.2d 385 (Ill. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Boyd v. Village of Wheeling, et al.,* 83 C 4768, 1985 WL 2564 (N.D. Ill. Sept. 12, 1985). . . . . 7-9

*Buckley v. Fitzsimmons,* 509 U.S. 259 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*Burns v. Reed,* 500 U.S. 478 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cianci v. Pettibone Corp.,* 698 N.E.2d 674 (Ill. App. Ct. 1998). . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cody v. Harris,* 409 F.3d 853 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Elliot v. Thomas,* 937 F.2d 338 (7th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Estate of Escobedo v. Bender,* 600 F.3d 770 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fields v. Wharrie,* 740 F.3d 1107 (7th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Frank v. Garnati,* 989 N.E.2d 319 (Ill. App. Ct. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gist v. Macon County Sheriff's Dep't.,* 671 N.E.2d 1154 (Ill. App. Ct. 1996). . . . . . . . . . . . . . 16

*Gordon v. Devine,* 2008 WL 4594354 (N.D. Ill. Oct. 14, 2008). . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hobbs v. Cappelluti,* 899 F. Supp.2d 738 (N.D. Ill. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Hopewell v. Vitullo,* 701 N.E.2d 99 (Ill. App. Ct. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Houston v. Partee,* 978 F.2d 362 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hunt v. Jaglowski,* 926 F.2d 689 (7th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

*Hunter v. Bryant,* 502 U.S. 224 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES
### -CONTINUED-

**Cases:**                                                                                          **Page**

*Imbler v. Pachtman,* 424 U.S. 409 (1976)................................................... 6

*McCoy v. Harrison,* 341 F.3d 600 (7th Cir. 2003). .................................... 5

*Morton v. Hartigan,* 495 N.E.2d 1159 (Ill. App. Ct. 1986)............................ 15

*Patterson v. Burge,* 03 C 4433, 2010 WL 3894438 (N.D. Ill. Sept. 27, 2010) ........... 7-9, 12

*Patterson v. Burge,* 328 F. Supp. 2d 878 (N.D. Ill. 2004).............................. 15

*Pearson v. Callahan,* 555 U.S. 223 (2009). ........................................ 10

*Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691 (7th Cir. 2006). ........................... 5

*Snyder v. Nolan,* 380 F.3d 279 (7th Cir. 2004). ..................................... 10

*Solaia Tech. LLC v. Spec. Pub.Co.,* 852 N.E.2d 825 (Ill. App. Ct. 2006)............... 12, 16

*Springer v. Durflinger,* 518 F.3d 479 (7th Cir. 2008). .............................. 5

*Ware v. Carey,* 394 N.E.2d 690 (Ill. App. Ct. 1979)................................. 15

*Yang v. Hardin,* 37 F.3d 282 (7th Cir. 1994)....................................... 11

**Statutes:**                                                                                       **Page**

FED. R. CIV. P. 56................................................................ 1, 5

L.R. 56.1. ...................................................................... 1

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN A. RIVERA, JR., | ) | |
| | ) | Case No. 12 CV 8665 |
| Plaintiff, | ) | |
| | ) | Honorable Harry D. Leinenweber |
| v. | ) | |
| | ) | |
| LAKE COUNTY, Illinois, et al., | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF PROSECUTOR DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants MICHAEL WALLER, JEFFREY PAVLETIC, MATTHEW CHANCEY,

STEVEN McCOLLUM, and MICHAEL MERMEL (Prosecutor Defendants), by their attorneys,

The Sotos Law Firm, P.C., and pursuant to FED. R. CIV. P. 56, and L.R. 56.1(a)(2) submit the

following memorandum of law in support of their motion for summary judgment.

**BACKGROUND - UNDISPUTED FACTS**

A.     **Plaintiff's Involvement in the Staker Murder Investigation.**

On August 17, 1992, an investigation into the rape and murder of Holly Staker was

launched by the Lake County Major Crimes Task Force ("LCMCTF")[1].  (SOF ¶¶ 16, 17.)  In

September of 1992, Plaintiff became involved in the Staker homicide investigation after he told a

fellow Lake County Jail ("LCJ") inmate that he was at a party on August 17, 1992, and had seen

a suspicious man who may have been involved in the murder.  (TAC ¶¶ 19, 20.)  On September

---

[1]  The LCMCTF, established via an intergovernmental agreement and bylaws, is comprised of
multiple police agencies located within Lake County and provides additional resources and experience to
all municipalities within Lake County on an as-needed basis for major homicide cases, police involved
shootings, non-parental kidnappings, and other exceptionally heinous offenses.  (SOF ¶ 7.)

29, 1992, Edward Martin, a fellow detainee of Plaintiff's at the LCJ, told LCMCTF investigators that Plaintiff had information about the Staker homicide. (SOF ¶ 20.) On October 2, 1992, Plaintiff told LCMCTF investigators Held and Gentilcore that on August 17, 1992, the day of the murder, he was at a party at the Craig house where he observed an unidentified male come and go on multiple occasions between the hours of 4:30pm and 9:00pm. (SOF ¶¶ 21, 22.) Plaintiff further told LCMCTF investigators that this man had acted suspiciously, returned to the party out of breath and with torn clothing and might have been involved in the Staker homicide. (SOF ¶¶ 21, 22.) LCMCTF investigator Held reduced this statement to writing and Plaintiff signed it. (SOF ¶ 22.)

On October 27, 1992, Plaintiff was transferred to LCJ on a *Writ of Habeas Corpus Ad Testificandum*. (SOF ¶¶ 23, 24.) Between October 27 and October 30, 1992, Plaintiff was interviewed by various LCMCTF investigators and submitted to polygraph examinations. (SOF ¶ 25.) On October 30, 1992, between 12:00 a.m. and 3:15 a.m., LCMCTF investigators Fagan and Meadie obtained a verbal statement from Plaintiff implicating himself in the Staker homicide (SOF ¶ 26) and at 8:10 a.m., Plaintiff signed a written confession admitting he murdered Holly Staker. (SOF ¶ 31.)

B.    **Prosecutor Defendants' Involvement[2] with Plaintiff and the LCMCTF.**

Upon obtaining Plaintiff's first verbal statement, but before Plaintiff signed it, a LCMCTF investigator notified Defendant Pavletic that Plaintiff confessed (SOF ¶¶ 27, 28) and a

---

[2] At the inception of the LCMCTF, Defendant Waller, in his capacity as the State's Attorney for the Lake County State's Attorney's Office ("LCSAO"), designated Defendant McCollum, the Chief Deputy State's Attorney of the Criminal Division, as the LCSAO board member and Defendant Pavletic, due to his position as Chief of Felony Review Division, as the LCSAO representative and liaison to the LCMCTF. (SOF ¶¶ 1-4, 8-14.) As liaison, Defendant Pavletic's duties mirrored, and were limited to, his prosecutorial duties in felony review. (SOF ¶¶ 11-14.)

meeting to discuss the evidence and Plaintiff's statements was set for 9:15 a.m. (approximately) on October 30, 1992, in Defendant Waller's office. (SOF ¶ 29.) At approximately 3:15 a.m., LCMCTF investigator Meadie began typing a written statement summarizing Plaintiff's verbal statement. (SOF ¶ 30.) This typed statement included Plaintiff's admissions that he (1) knew the victim and that she was baby-sitting at the time of the crime, (2) went into the upstairs apartment where the crime occurred, (3) had intercourse with the victim, and (4) repeatedly stabbed the victim with a knife. (SOF ¶ 32.) On October 30, 1992, at 8:10 a.m., prior to the meeting, Plaintiff signed the statement typed by LCMCTF investigator Meadie. (SOF ¶ 31.)

On the morning of October 30, 1992, at approximately 9:15 a.m., Prosecutor Defendants Waller, McCollum, Pavletic and Chancey met with LCMCTF investigators Fagan, Del Re, Meadie and Maley and Waukegan Police Chief Stevenson in Defendant Waller's office. (SOF ¶ 34.) The participants in the meeting discussed the evidence in the case and Plaintiff's statements, including the signed confession. (SOF ¶ 35.) The LCMCTF investigators also told the Prosecutor Defendants that Plaintiff became emotional and banged his head against a wall after he made the verbal statement implicating himself in the murder. (SOF ¶ 36.) Persons charged with serious crimes at LCJ sometimes banged their heads and were commonly put on suicide watch in the jail's rubber room to prevent self-inflicted injuries. (SOF ¶ 37.) The Prosecutor Defendants were not provided with any information indicating that Plaintiff's confession or subsequent actions were the result of any abusive or coercive interrogation tactics. (SOF ¶ 57.)

The participants in the meeting also discussed the inconsistencies between Plaintiff's signed confession and the evidence of the crime scene; for example, the implausibility that the victim attacked him with a knife and the fact that Plaintiff incorrectly described the victim's

clothing.  (SOF ¶ 38.)  In Defendant McCollum's experience as an ASA, when a person admits

to a heinous crime, he or she sometimes couches that admission in terms that make them appear

less culpable.  (SOF ¶ 39.)  After discussing the evidence, Plaintiff's signed confession, and the

inconsistencies between the two, the Prosecutor Defendants concluded they had probable cause

to charge Plaintiff with the crime.  (SOF ¶ 40.)  Nonetheless, Defendant Waller suggested that

LCMCTF investigators have Plaintiff read his first signed confession out loud and attempt to

further interview him regarding the inconsistencies.  (SOF ¶¶ 41-43.)

      Shortly after the meeting at Waller's office, at approximately 10:30 a.m., LCMCTF

investigators Fagan and Meadie had Plaintiff read his earlier statement out loud.  (SOF ¶ 44.)

The signed statement reflects Plaintiff changed one word.  (SOF ¶ 45.)  Thereafter, from roughly

11:30 a.m. to 12:30 p.m., LCMCTF investigators Tessmann and Maley re-interviewed Plaintiff

about the Staker homicide (SOF ¶¶ 46, 47), which resulted in Plaintiff signing an additional

statement implicating himself in the murder.  (SOF ¶¶ 48, 49.)  This statement contained more

details consistent with the crime scene and information the LCMCTF investigators believed only

the perpetrator would have known.  (SOF ¶¶ 48, 49.)  On the afternoon of October 30, 1992, after

learning of the second signed statement, Defendant Waller charged Plaintiff with the Staker

Homicide.  (SOF ¶¶ 49-51.)

      With the exception of Defendant Waller suggesting that LCMCTF investigators have

Plaintiff read his first statement aloud and re-interview him regarding inconsistencies in his first

confession (SOF ¶¶ 42, 43), no Prosecutor Defendant participated in, directed, witnessed, or

observed any interview or interrogation of Plaintiff prior to the October 30, 1992 charging

decision.  (SOF ¶¶ 54-56.)  No Prosecutor Defendant was involved in drafting either of

Plaintiff's incriminating statements.  (SOF ¶ 58.)  At no time prior to the charging decision on

October 30, 1992, did any Prosecutor Defendant have any information suggesting Plaintiff had

been subjected to abusive or coercive interrogation tactics.  (SOF ¶ 57.)  Defendant Mermel did

not attend the October 30 1992 meeting and was uninvolved in the prosecution of *People v.*

*Rivera* until the Illinois Appellate Court reversed Plaintiff's conviction in November of 1996.

(SOF ¶¶ 34, 60.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with any affidavits, show that there is no genuine

issue of material fact and the movant is entitled to judgment as a matter of Law.  FED. R. CIV. P.

56(c).  "The initial burden is on the moving party . . . to demonstrate that there is no material

question of fact with respect to an essential element of the non-moving party's case." *Cody v.*

*Harris,* 409 F.3d 853, 860 (7th Cir. 2005).  If the moving party meets this burden, the

non-moving party must submit evidence that there is a genuine issue for trial.  FED. R. CIV. P.

56(e); *Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 694 (7th Cir. 2006).  The existence of merely a

scintilla of evidence in support of the non-moving party's position is insufficient; there must be

evidence on which the jury could reasonably find for the non-moving party.  *See Springer v.*

*Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) (explaining that speculation and hunches about

defendants' motives cannot defeat summary judgment); *McCoy v. Harrison,* 341 F.3d 600, 604

(7th Cir. 2003) (same).

# SECTION 1983 CLAIMS

The only federal claims directed at Prosecutor Defendants are Counts I and II, alleging Coerced and False Confession under the Fifth and Fourteenth Amendments respectively, and Count VI, alleging Failure to Intervene. Specifically, Counts I and II allege Prosecutor Defendants, "acting as investigators," along with the LCMCTF investigators, "forced Plaintiff to incriminate himself falsely and against his will." (TAC ¶¶ 116, 132.) Count VI alleges "one or more of the individual Defendants stood by without intervening to prevent violation of Plaintiff's constitutional rights." (TAC ¶ 161.) Yet there is no evidence to suggest any Prosecutor Defendant was personally involved in Plaintiff's interrogation (SOF ¶¶ 54-58), and any actions taken after they were made aware of his confession are protected by prosecutorial immunity. Alternatively, if the Court is unable to determine they were functioning as prosecutors, for any challenged action, the Prosecutor Defendants are entitled to qualified immunity since their actions did not violate any clearly established constitutional right.

## A.     The Prosecutor Defendants are Entitled to Prosecutorial Immunity.

In initiating a prosecution and in presenting the State's case, prosecutors are immune from civil suit for damages. *Imbler v. Pachtman,* 424 U.S. 409 (1976). Absolute immunity applies to conduct that is "intimately associated with the judicial phase of the criminal process." *Burns v. Reed,* 500 U.S. 478, 486 (1991); *Houston v. Partee,* 978 F.2d 362, 365 (7th Cir. 1992). But, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley v. Fitzsimmons,* 509 U.S. 259, 274-74 (1993). The Seventh Circuit has given *Imbler* a broad reading:

When determining which type of immunity a [prosecutor] enjoys, we look to the nature of the function that the [prosecutor] was performing in the particular case. If a [prosecutor's] function was quasi-judicial, the [prosecutor] enjoys absolute immunity. If the function was administrative or investigatory, the [prosecutor] enjoys only qualified immunity. *Hunt v. Jaglowski,* 926 F.2d 689, 693 (7th Cir. 1991).

The undisputed facts in this case are factually similar to several other cases where absolute prosecutorial immunity has been applied. *See Hunt*; *Patterson v. Burge,* 03 C 4433, 2010 WL 3894438 (N.D. Ill. Sept. 27, 2010) (Gottschall, J.); and *Boyd v. Village of Wheeling, et al.,* 83 C 4768, 1985 WL 2564 (N.D. Ill. Sept. 12, 1985) (Grady, J.). Each of these cases involved initial questioning of a plaintiff by investigators, resulting in a verbal confession, followed by a review of the evidence and further questioning of the plaintiff by a prosecutor before a formal charging decision was made[3].

In *Boyd*, the plaintiff testified that after he was questioned by police, he informed the prosecutor of improper and coercive tactics used by police officers during his interrogation. The plaintiff claimed the prosecutor, despite this knowledge, failed to terminate the illegal questioning, and instead interrogated plaintiff himself. Judge Grady rejected plaintiff's contention that during this questioning, the prosecutor was acting as an investigator, not a prosecutor, and therefore his actions were not subject to absolute immunity:

It is reasonable, indeed desirable, that [prosecutor] Zehe questioned plaintiff himself to verify the confession obtained by the police before making his own decision whether or not to file charges. Zehe did not participate in the decision to interrogate plaintiff for seven hours, call in a hypnotist and hold plaintiff until he confessed. We find, therefore, that Zehe's actions were part of his quasi-judicial function in gathering and evaluating evidence in order to make a prosecutorial

---

[3] In this case, the Prosecutor Defendants' entitlement to immunity is even clearer because, unlike in *Hunt, Patterson,* and *Boyd*, no Prosecutor Defendant even participated in the questioning of Plaintiff. (SOF ¶¶ 54-58.)

decision as to whether or not to file charges.  Zehe is absolutely immune from civil liability for his actions in connection with this case, and accordingly, all claims under section 1983 against him are dismissed.  *Boyd* at *11.

Similarly, in *Hunt*, the Seventh Circuit affirmed a directed verdict in favor of a prosecutor on grounds of prosecutorial immunity.  In that case, a prosecutor told a plaintiff who described a coerced confession to him that he could do nothing about it and left the interrogation room. Minutes later, one of the officers whom the plaintiff had accused returned to the room, accused the plaintiff of "telling on him," and threatened plaintiff again.  As a result, plaintiff agreed to confess, and the prosecutor returned to witness and sign plaintiff's confession.  *Hunt* at 693. Even under these facts, the Seventh Circuit found prosecutorial immunity applied since the prosecutor's initial contact with the plaintiff came after he had already confessed to the police and he was not present at the particular time Hunt alleges he gave his coerced statement.  *Hunt,* at 693.

These decisions are supported by sound public policy which favors application of prosecutorial immunity to prosecutors serving in a felony review capacity when they are engaged in reviewing evidence for the purpose of making a charging decision. At this early stage, prosecutor participation weeds out non-meritorious cases, prevents pre-trial detention in such cases and promotes judicial economy by preventing meritless criminal prosecutions before they begin.  The public benefits greatly from the vigorous operation of felony review units (or prosecutors performing similar functions).  As Judge Gottschall noted in *Patterson,* in granting absolute immunity to a prosecutor who took an allegedly coerced confession:

The function of a Felony Review Unit ASA - evaluating evidence to determine whether to file charges, interviewing an accused after he or she has confessed, and recording a confession - is clearly part of prosecutor's role as advocate for the State. *Patterson,* 2010 WL 3894438 at *9 (internal citations omitted).

*Boyd, Hunt,* and *Patterson* parallel this case, which involves officer questioning of the plaintiff, which yielded a confession, followed by prosecutorial review. In all of these cases, the prosecutors were entitled to absolute immunity because they performed essential prosecutorial functions that were closely tied to the judicial process. Indeed, the prosecutors in those cases were entitled to immunity despite actually having participated in the interrogating of those plaintiffs; conduct which the Prosecutor Defendants did not engage in here. Prosecutors should not be denied immunity at the summary judgment stage of a civil rights case for performing their prosecutorial role in coordination with investigators.

It may be that a prosecutor and a police officer are examining the same evidence at the same time, but the prosecutor is examining the evidence to determine whether it will be persuasive at trial . . . , while the police officer examines the evidence to decide whether it provides a basis for arresting a suspect. *Buckley,* 509 U.S. at 289 (Kennedy, J., concurring in part and dissenting in part).

Viewed against that backdrop, Defendant Waller's instruction to Fagan that Plaintiff should read his confession aloud and be re-interviewed to clear up inconsistencies (SOF ¶ 41-43) does not change his role to one of investigator where, as in the above cited cases, this advice occurred after Plaintiff signed the initial written confession. Waller's conduct was safely within his prosecutorial role to evaluate evidence before filing charges, and as such, prosecutorial immunity plainly applies.

**B.  Alternatively, Prosecutor Defendants are Entitled to Qualified Immunity.**

Government officials performing discretionary functions are shielded from damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  The qualified immunity defense "gives public officials the benefit of legal doubts." *Elliot v. Thomas,* 937 F.2d 338, 341 (7th Cir. 1991). The plaintiff has the burden of demonstrating that defendant's error was clearly established.  *See, e.g., Snyder v. Nolan,* 380 F.3d 279, 290 (7th Cir. 2004).  To sustain that burden, Plaintiff must either identify closely analogous cases which demonstrate that the challenged conduct was unconstitutional, or in the absence of such case law, demonstrate that the conduct was so obviously unconstitutional that the violation was readily apparent. *Estate of Escobedo v. Bender,* 600 F.3d 770, 780-2 (2010).

The issue of qualified immunity is a question of law for the court. *Hunter v. Bryant,* 502 U.S. 224, 228 (1991) (*per curiam*).  Because qualified immunity protects the defendant not only from liability but also from the burdens of discovery and standing trial, courts should resolve immunity questions "at the earliest possible stage of the litigation" and may go directly to the question of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan,* 555 U.S. 223, 232, 236 (2009).

The undisputed facts in this case show that no Prosecutor Defendant was involved in the interrogation of Plaintiff or the drafting of either of the confessions that he signed on October 30, 1992.  (SOF ¶¶ 54-58.)  Their only involvement with the confession was in attending a meeting at which the first signed confession already obtained by LCMCTF investigators Fagan and Meadie was discussed and a decision was made that LCMCTF investigators would have Plaintiff

read his statement aloud and then attempt to re-interview Plaintiff to address any inconsistencies with the crime scene evidence. (SOF ¶¶ 34-43.) Defendant Waller's instruction, in that regard, was good prosecutorial practice. Indeed, conduct of that nature has never been held unconstitutional or improper, and cannot be considered so obvious a constitutional violation that no analogous case is needed to circumvent his entitlement to qualified immunity.

With respect to the alleged failure to intervene, the Seventh Circuit and the Northern District have never recognized such a claim against a prosecutor. *Gordon v. Devine,* 2008 WL 4594354 at *17 (N.D. Ill. Oct. 14, 2008). Prosecutors have different roles than police, and the former do not have a duty to intervene with the latter. *Andrews v. Burge,* 660 F. Supp. 2d 868, at 876 n.6 (N.D. Ill. 2009); *cf. Anderson v. Simon,* 217 F.3d 472, 476 (7th Cir. 2000) ("police are not obligated to adhere to the suggestions of the state's attorney's office, a separate and distinct organization with no command authority" over the police). *See also, Hobbs v. Cappelluti,* 899 F. Supp.2d 738, 773 (N.D. Ill. 2012) (dismissing failure to intervene claim against prosecutors on the basis of *Gordon* and *Andrews*). Even if a failure to intervene claim was cognizable against prosecutors, there is no evidence here to support Plaintiff's claim that any Prosecutor Defendant had knowledge of the unconstitutional conduct and were in a position to intervene or prevent it from occurring. *See Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994). Based on the undisputed facts in this case, there is no basis to deny qualified immunity to the Prosecutor Defendants.

## STATE LAW CLAIMS

The state law claims directed at the Prosecutor Defendants are Counts VII (Malicious Prosecution) and VIII (IIED) and, with respect to Defendant Mermel, Count X (Defamation).

**A.  Prosecutorial Immunity Defeats Plaintiff's State Law Claims.**

Plaintiff's state law claims for malicious prosecution and IIED are also barred by absolute prosecutorial immunity.  Illinois courts apply the same analysis followed by federal courts in determining whether absolute prosecutorial immunity applies.  *Fields v. Wharrie,* 740 F.3d 1107, 1115 (7th Cir. 2014) (recognizing that every recent Illinois Appellate Court opinion addressing this issue has determined that Illinois law follows federal law on the application of absolute prosecutorial immunity).  Indeed, the Illinois Supreme Court recently declined the opportunity to review this trend after the most recent appellate decision approved the application of state law in this manner.  *Frank v. Garnati,* 989 N.E.2d 319, 322 (Ill. App. Ct. 2013), *leave to appeal denied*, 996 N.E.2d 12 (Ill. 2013).  Prosecutor Defendants should be granted summary judgment based on their entitlement to absolute prosecutorial immunity as analyzed in reference to Plaintiff's federal claims.  *See Patterson,* 2010 WL 3894438 at *11 (prosecutorial immunity barred plaintiff's state claims of malicious prosecution and IIED for the same reasons his federal claims were barred).

**B.  Defendant Mermel is Entitled to Summary Judgment on Plaintiff's Defamation Claim.**

"To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages."  *Solaia Tech. LLC v. Spec. Pub.Co.,* 852 N.E.2d 825, 839 (Ill. App. Ct. 2006).  Plaintiff's defamation claim is based on Defendant Mermel's alleged statements to a New York Times ("NYT") reporter, which were published November 25, 2011.  (SOF ¶ 73.)  Plaintiff identifies three statements as defamatory:

(1) "Holly had sex with someone else on the day of her murder, after which Plaintiff came along and raped (but didn't ejaculate) and murdered Staker;"

(2) "We don't fold our tents and run . . . we don't quaver because someone holds up three letters: DNA;" and

(3) "The example I like to give people . . . is next time you go to a motel room, bring a plastic bag, because the dirtiest thing in the room is the remote control. Everybody has sex and then rolls over and goes, 'I wonder what's on?' . . . O.K., so you can find DNA in the form of sperm from 10 different people in that room from that remote control or even on a person who has touched it. And that woman gets murdered in that room tonight and you are going to have a lot of DNA. Is it all going to be forensically significant?" (TAC ¶¶ 180-83.)

Plaintiff alleges the statements were "of or concerning Plaintiff," made "after [Mermel's] involvement in the criminal case had ended," and "were not made in connection with his employment with" the LCSAO. (TAC ¶¶ 179-82.)

1. **Defendant Mermel Did Not Tell the NYT that Plaintiff Raped and Murdered Holly Staker.**

Plaintiff incorrectly claims that Defendant Mermel is quoted in the NYT article as saying "Holly had sex with someone else on the day of her murder, after which Plaintiff came along on that day and raped (but didn't ejaculate) and murdered Staker." (TAC ¶ 180.) But, the NYT article does not contain any such quote; rather, it states that this is one of Mermel's theories. (SOF ¶ 73 at Ex. JJ.) Indeed, the only quoted statement in the NYT article that is similar to the one Plaintiff attributes to Mermel was actually made by Plaintiff's criminal defense counsel, who stated:

This is a rape and murder of an 11-year-old child, and the semen found inside the girl excludes Juan Rivera,' Jeffrey Urdangen, one of Rivera's lawyers, said. 'According to the state's perverse theory, the girl, the unfortunate victim, was having sex with another man who was not the murderer.' (SOF ¶ 74.)

13

Finally, a review of the interview transcript between Defendant Mermel and the NYT reporter demonstrates that Mermel did not make any such statement during the interview. (SOF ¶ 72, at Ex. II.)

### 2. Defendant Mermel's Other Statements Were Not of or Pertaining to Plaintiff.

The other two statements Plaintiff alleges to be defamatory were made to the NYT in the context of DNA cases, in general. (SOF ¶¶ 77-79.) As evidenced by the transcript of the NYT interview, Defendant Mermel made the statements: (1) "We don't fold our tents and run . . . we don't quaver because someone holds up three letters: DNA," and (2) the motel remote control analogy to explain how he handled the presence of DNA evidence from a non-defendant, generally, and not to Plaintiff in particular. (SOF ¶¶ 77, 72, at Ex. II.)

### 3. Defendant Mermel's Statements are Protected by Absolute Executive Privilege.

When Defendant Mermel was contacted by the NYT, he was a current LCSAO ASA, who had been the State's lead trial prosecutor in the Plaintiff's third criminal trial, and Plaintiff's third conviction had not yet been overturned. (SOF ¶¶ 60, 61, 68-70.) When Defendant Mermel was asked about *People v. Rivera* (and two other cases involving DNA evidence), the reporter told him that he had already spoken to opposing counsel and requested that Mermel "direct [him] to a brief or something from each of these cases that sort of lays out [the state's] case." (SOF ¶ 72, at Ex. II, at 2:10.) Defendant Mermel provided the reporter with statements concerning the evidence and arguments presented at the third criminal trial, all of which are present in the trial transcript, and thus constitute a fair summary of the State's case. (SOF ¶¶ 62-67, 71-73, 76-79.)

14

As a result, Defendant Mermel's statements are protected by the absolute executive

privilege recognized by the Illinois Supreme Court in *Blair v. Walker,* 349 N.E.2d 385 (Ill. 1976)

(Governor is protected from defamation actions when issuing statements legitimately related to

matters committed to his responsibility).  In *Patterson v. Burge,* 328 F. Supp. 2d 878, 885-86

(N.D. Ill. 2004), the Cook County State's Attorney and a prosecutor publicly condemned

plaintiff's pardon and described him as "evil," a "convicted murderer," and "guilty of the

murders."  The court dismissed this defamation claim, holding that Illinois prosecutors "have an

absolute privilege to comment on issues within the scope of their employment" and "commenting

to the public on criminal cases" is within the scope of a prosecutor's employment.  *Id.* at 902,

relying on *Ware v. Carey,* 394 N.E.2d 690, 693-97 (Ill. App. Ct. 1979) (extending Blair's

absolute executive privilege for public statements to state's attorneys); *see also, Morton v.

Hartigan,* 495 N.E.2d 1159, 1164-65 (Ill. App. Ct. 1986) (extending protections of *Ware* to

lower level public officials such as prosecutors).

**4.      Defendant Mermel's Statements are Protected by Attorney Litigation
         Privilege.**

The statements Plaintiff complains of arose from the evidence and arguments presented at

Plaintiff's third criminal trial and are absolutely privileged under Illinois law.  In Illinois, "[a]n

attorney at law is absolutely privileged to publish defamatory matter concerning another in

communications preliminary to a proposed judicial proceeding, or in the institution of, or during

the course and as a part of, a judicial proceeding in which he participates as counsel, if it has

some relation to the proceeding."  *Hobbs v. Cappelluti,* at 776, (quoting Restatement (Second) of

Torts § 586 (1977)).  Thus, not only are Defendant Mermel's statements to the NYT privileged

and protected because he merely provided a fair summary of the proceedings, his statements made in the court proceedings are protected by the attorney litigation privilege.  (SOF ¶¶ 62-67, 71-73, 76-79.)

     **5.**     **Defendant Mermel's Statements are Protected by the Fair Report Privilege.**

"The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported."  Restatement (Second) of Torts § 611 (1977).  *See also, Solaia Tech. LLC v. Spec. Pub. Co.,* 852 N.E.2d 825, 843 (Ill. App. Ct. 2006) (holding "the fair report privilege overcomes allegations of either common law or actual malice").  As shown above, Defendant Mermel's statements to the NYT were a fair summary of the facts and arguments presented at the third criminal trial and, as such, are protected by the fair report privilege.

     **6.**     **Defendant Mermel's Statements Were True and are Protected Opinion.**

Defendant Mermel's statement to the NYT concerning DNA evidence, generally, are not only part of the trial record; they are also true and non-actionable opinion.  "While substantial truth is normally a question for the jury, where no reasonable jury could find that substantial truth had not been established, the question is one of law."  *Cianci v. Pettibone Corp.,* 698 N.E.2d 674, 679 (Ill. App. Ct. 1998), citing, *Gist v. Macon County Sheriff's Dep't.,* 671 N.E.2d 1154 (Ill. App. Ct. 1996).  Additionally, a "pure opinion" is not actionable.  While in one sense all opinions imply facts, the question of whether an opinion is actionable as defamation is one of degree; the more generalized and vague, the more likely the opinion is non-actionable as a matter of law.  *Hopewell v. Vitullo,* 701 N.E.2d 99, 105 (Ill. App. Ct. 1998).

Defendant Mermel's statement "[w]e don't fold our tents and run . . . we don't quaver because someone holds up three letters: DNA" described how he, in his opinion and as an ASA, handled the presence of DNA evidence from a non-defendant.  (SOF ¶¶ 66, 78, 79.)  The NYT interview transcript, in its entirety, establishes this is opinion in that Defendant Mermel further explained, "it's my job to actually make the trier of fact look at the evidence and actually go not just, oh, sex and death, or this and that or the other thing, but actually look at the evidence and go, okay, well, what's it add up to?"  (SOF ¶ 72, at Ex. II, at 53:15-19.)

Likewise, Defendant Mermel's comment about the "motel remote control" was an analogy he used to express the opinion that there may be other reasons why DNA from someone other than the defendant is found at a crime scene or on a piece of physical evidence.  Further, the motel remote control analogy is true as Plaintiff's own DNA expert agreed with this analogy at the criminal trial.  (SOF ¶¶ 64-67, 77.)  A review of the transcript of the Plaintiff's third criminal trial compared to Defendant Mermel's statements made to the NYT clearly shows that his comments were true and/or protected opinion.  (SOF ¶¶ 77, 72, at Ex. II.)

## CONCLUSION

For all the above-stated reasons, the Prosecutor Defendants should be granted summary judgment and all of the claims against them should be dismissed.

Dated: February 5, 2015                      Respectfully Submitted,

                                             /s/ Thomas F. Downing
                                             THOMAS F. DOWNING, Attorney No. 6188673
THE SOTOS LAW FIRM, P.C.                      *One of the Attorneys for Defendants Michael*
550 East Devon, Suite 150                     *Waller, Jeffrey Pavletic, Matthew Chancey, Steven*
Itasca, Illinois 60143                        *McCollum, and Michael Mermel*
Tel: (630) 735-3300
tfdowning56@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on Tuesday, February 10, 2015, I electronically filed the foregoing **Memorandum of Law in Support of Prosecutor Defendants' Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants listed on the attached Service List.

/s/ Thomas F. Downing
THOMAS F. DOWNING, Attorney No. 6188673
*One of the Attorneys for Defendants Michael Waller, Jeffrey Pavletic, Matthew Chancey, Steven McCollum, and Michael Mermel*

**SERVICE LIST**
*Rivera v. Lake County, et al.*
**Case No.: 12 cv 08665**

**Attorneys for Plaintiff**
Arthur R. Loevy
Jonathan I. Loevy
Elizabeth N. Mazur
Russell R. Ainsworth
Michael I. Kanovitz
Steven E. Art
Scott R. Rauscher
Elliot R. Slosar
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (fax)
loevylaw@loevy.com
jon@loevy.com
elizabethm@loevy.com
russell@loevy.com
mike@loevy.com
steve@loevy.com
scott@loevy.com
elliot@loevy.com

Locke E. Bowman, III
Sheila A. Bedi
David M. Shapiro
Stephen H. Weil
Roderick MacArthur Justice Center
Northwestern University School of Law
357 East Chicago Avenue
Chicago, IL 60611
(312) 503-0844
(312) 503-1272 (fax)
l-bowman@law.northwestern.edu
sheila.bedi@law.northwestern.edu
david.shapiro@law.northwestern.edu
steve.weil@law.northwestern.edu

J. Samuel Tenenbaum
Bluhm Legal Clinic
357 East Chicago Avenue
Chicago, IL 60611
(312) 503-4808
s-tenenbaum@law.northwestern.edu

**City of Lake Forest and James Held**
Paul Alan Rettberg
Brandon K. Lemley
Nicholas Johnson
Timothy R. Rabel
Thomas P. Burke
Querrey & Harrow, Ltd.
175 West Jackson Boulevard
Suite 1600
Chicago, IL 60604
(312) 540-7000
prettberg@querrey.com
blemley@querrey.com
njohnson@querrey.com
trabel@querrey.com
tburke@querrey.com

**Attorneys for Gary Del Re**
Alison M. Harrington
Christina M. Tribbia
Best, Vanderlaan & Harrington
25 E. Washington St., Suite 800
Chicago, IL 60602
(312) 819-1100
(312) 819-8062 (Fax)
eservice@bestfirm.com

**Attorneys for Michael Maley & James Gentilcore**
Laura M. Rawski
Michael T. Dierkes
Deborah M. Beltran
T. Andrew Horvat
Jessica M. Scheller
Thomas A. Ioppolo
Illinois Attorney General's Office
100 W. Randolph St., 13th Floor
Chicago, IL 60601
(312) 814 3700
Lrawski@atg.state.il.us
mdierkes@atg.state.il.us
dbeltran@atg.state.il.us
thorvat@atg.state.il.us
jscheller@atg.state.il.us
tioppolo@atg.state.il.us

**Attorneys for John Reid & Associates, Inc.**
Charles Frank Marino
David M. Marino
Attorney at Law
29 S. LaSalle Street
Suite 434
Chicago, IL 60603
(312) 236-4260
monsuite@aol.com

**Attorneys for John Reid & Associates, Inc. and Michael Masokas**
Robert E. Haley
C. Ryan Finlen
Alfred Kirkland Murray, II
Swanson, Martin & Bell, LLP
330 North Wabash
Suite 3300
Chicago, IL 60611
(312) 321-9100
rhaley@smbtrials.com
amurray@smbtrials.com
cfinlen@smbtrials.com

**Attorneys for City of Waukegan, Lucian Tessman, Donald Meadie, Fernando Shipley, Mary LaCour as special representative of the Estate of Howard Pratt and Dennis Cobb, Richard Davis, Phillip Stevenson, Terry House, Robert Repp, Burton Setterlund**
Peter Michael Trobe
Michael D. Furlong
Trobe, Babowice & Associates, LLC
404 West Water Street
Waukegan, Illinois 60085
ptrobe@tbalaws.com
mfurlong@tbalaws.com

**Attorneys for Village of Buffalo Grove, Lake County Major Crimes Task Force**
James L. DeAno
Laura L. Scarry
Collin D. Woodward
Debra A. Harvey
Monifa K. Gray
DeAno & Scarry, LLC
53 W. Jackson Blvd.
Suite 740
Chicago, IL 60604
(630) 690-2800
jimdeano@deanoscarry.com
lscarry@deanoscarry.com
cwoodward@deanoscarry.com
dharvey@deanoscarry.com
mgray@deanoscarry.com

**Attorneys for Village of Round Lake Beach and David Ostertag**
Scott A. Puma
Darcy L. Proctor
Darlene Hincks
Thomas DiCianni
John P. Christensen
Ancel Glink Diamond Bush DiCianni & Rolek, P.C.
140 South Dearborn Street
6th Floor
Chicago, IL 60603
(312) 782-7606
spuma@ancelglink.com
dproctor@ancelglink.com
dhincks@ancelglink.com
tdicianni@ancelglink.com
jchristensen@ancelglink.com